Lucas Buckley, #6-3997
Heather N. Jarvis, #7-5503
HATHAWAY & KUNZ, P.C.
P. O. Box 1208
Cheyenne, WY 82003-1208
(307) 634-7723
(307) 634-0985 (fax)
lbuckley@hkwyolaw.com
hjarvis@hkwyolaw.com
ATTORNEYS FOR PLAINTIFF,
JONATHAN CLEARY

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2015 OCT 20 PM 4 13
STEPHAN HARRIS, CLERK
CHEYENNE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

JONATHAN CLEARY )
)
    Plaintiff, )
)
vs. ) Docket No. 15-cv-189
)
WIND QUARRY, LLC; WIND QUARRY )
OPERATIONS, LLC; PATRICK D. O'MEARA; )
and JOHN K. O'MEARA )
)
    Defendants. )

# COMPLAINT

COMES NOW Plaintiff, Jonathan Cleary, by and through his attorneys, HATHAWAY & KUNZ, P.C., and for his Complaint against Defendants Wind Quarry, LLC; Wind Quarry Operations, LLC; Patrick D. O'Meara; and John K. O'Meara states and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Jonathan Cleary is an individual who resides in Santa Barbara, California.

2. Defendant Wind Quarry, LLC (hereinafter "WQ" or collectively included as "Defendants") is a Wyoming limited liability company, with its principal place of business in Montrose, Colorado.

3. Defendant Wind Quarry Operations, LLC (hereinafter "WQO" or collectively included as "Defendants") is a Delaware limited liability company. WQ wholly owns WQO, and WQO holds certain assets of WQ that are material to a particular wind power development project described herein.

4. Defendant Patrick D. O'Meara (hereinafter "PDO" or collectively included as "Defendants") is a resident of Colorado and, at all times pertinent, was a member, managing member, and/or manager of WQ and WQO.

5. Defendant John K. O'Meara (hereinafter "JKO" or collectively included as "Defendants") is a resident of Indiana and, at all times pertinent, was a member, managing member and/or manager of WQ and WQO.

6. This Court has jurisdiction under 28 USC § 1332. This is an action between citizens of different states, and the amount in controversy of this action exceeds $75,000.

7. Venue is proper in this Court under 28 USC § 1391. WQ, the principal limited liability company defendant involved in this action, was formed and operated in accordance with the provisions of the Wyoming Limited Liability Company Act and is a Wyoming limited liability company.

**FACTUAL BACKGROUND**

8. In February 2014, Defendants contracted with Plaintiff for financial advisory services, specifically, to assist WQ with raising capital to fund the development of a 325

megawatt wind farm in Butte County, South Dakota (the "Project"). At that time, Defendants agreed to compensate Plaintiff on an hourly basis at the same rate Defendants had previously paid Plaintiff for financial advisory services.

9. Through late June 2014, Plaintiff successfully performed advisory services for WQ, devoting substantial time and effort, but did not receive any compensation.

10. With the capital raise for the Project nearing successful completion, in June 2014, Defendants asked Plaintiff to continue to provide ongoing services in the capacity of WQ's Chief Financial Officer, offering Plaintiff, as compensation therefor, a five percent (5.0%) profits interest in WQ, i.e., a guarantee that, upon sale of the Project, WQ, or WQO, Plaintiff would receive 5.0% of the "net proceeds" of the sale (the "Profits Interest").

11. PDO represented to Plaintiff that, upon substantial completion of the development stage, similar projects typically sold for $1,000,000 or more per megawatt, making the likely Project value upon sale $325,000,000.

12. As Chief Financial Officer, Plaintiff became a member of the four-person management team consisting of PDO as Chief Executive Officer, JKO as Chief Operating Officer, a Chief Engineer, and Plaintiff.

13. Included in the definitive terms of the Profits Interest contract established by negotiation between Plaintiff, PDO, and JKO (the "Profits Interest Contract"), was an agreement that the Profits Interest would be Plaintiff's sole compensation for all work done by Plaintiff for Defendants since February 2014. Under the Profits Interest Contract, Defendants' existing obligation to pay Plaintiff the hourly compensation he had earned to date, approximately

$63,000, would be discharged upon the issuance of the Profits Interest and Defendants' performance of their obligations related thereto.

14. An additional, material term of the Profits Interest Contract was the agreement that, since the Profits Interest was to be Plaintiff's sole compensation for all work performed on behalf of Defendant's, Plaintiff's rights in and to the Profits Interest would immediately vest and be non-forfeitable.

15. Through February 11, 2015, Plaintiff continuously and successfully performed his obligations under the Profits Interest Contract, devoting substantial time and effort on Defendants' behalf.

16. At various times between June 2014 and the end of December 2014, at PDO's insistence, the previously established and agreed upon terms of the Profits Interest Contract were renegotiated to Plaintiff's detriment and Defendants' benefit.

17. By December 31, 2014, the renegotiated terms of the Profits Interest Contract were finally settled, reduced to writing, and approved in writing by Defendants. At the direction of Defendants, the terms of the Profits Interest Contract were incorporated into WQ's Operating Agreement by Defendants' legal counsel and the amended Operating Agreement was sent to WQ's investors on January 6, 2015 and again on January 9, 2015. A meeting of the minds with respect to the Profits Interest Contract was reached, documented, and published.

18. The agreed upon terms of the Profits Interest Contract allowed Defendants to terminate their working relationship with Plaintiff and extinguish his rights in the Profits Interest only if (a) Plaintiff provided services to a competitor or (b) he committed "any act of gross negligence, fraud, deceit, or willful misconduct involving the Company or its Subsidiary."

19. In late January 2015, after having received the benefits of nearly a year of Plaintiff's dedicated efforts and services, PDO demanded that Plaintiff agree to a material and substantial change in the terms of the Profits Interest Contract. PDO demanded that Plaintiff agree that his relationship with Defendants could be severed, resulting in Plaintiff's forfeiture of his entire Profits Interest, upon Plaintiff's "failure to adhere to the requirements of the Company's Code of Conduct." Defendants would have sole discretion as to the determination of any breach of the Code of Conduct by Plaintiff. PDO's proposed change was entirely adverse to Plaintiff's interests.

20. This Code of Conduct, which Defendants sought to impose in early February 2015, was new in all respects. Defendants did not previously have a Code of Conduct or any similar stated rules, requirements, or restrictions. The parties had never agreed that Plaintiff's Profits Interest could be forfeited in the event Plaintiff failed to adhere to any code of conduct or similar requirements or restrictions. To the contrary, during their negotiation of the terms of the Profits Interest Contract, Plaintiff and Defendants had specifically agreed to exclude from the Profits Interest Contract any provision that subjected Plaintiff to the loss of his fully-vested Profits Interest for subjective reasons such as insubordination, malicious intent, or moral turpitude.

21. On February 11, 2015, Defendants advised Plaintiff by email that if he did not accept this material, adverse change to the Profits Interest Contract by February 16, 2015, Defendants would consider Plaintiff's refusal to do so as "your decision to leave the Company," i.e., that his failure to consent would be considered a "voluntary separation," resulting in the forfeiture of Plaintiff's Profits Interest.

22.     When the February 16, 2015, deadline passed, Defendants promptly severed their relationship with Plaintiff, by, *inter alia*, terminating his email account and his access to WQ's online accounting and banking facilities.

23.     In reliance upon the Profits Interest Contract, through February 16, 2015, Plaintiff continued to perform his assigned duties on behalf of Defendants.

24.     Since February 2015, Defendants have denied the validity of the Profits Interest Contract.

25.     Since February 2015, Defendants have denied that they have any obligation to compensate Plaintiff for his services according to the terms of the Profits Interest Contract.

26.     Since February 2015, Defendants have denied that they have any obligation to compensate Plaintiff for his services on any basis.

## FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT

27.     Plaintiff incorporates by reference the allegations set forth herein.

28.     Plaintiff and Defendants entered into the Profits Interest Contract under which Plaintiff provided Defendants with financial advisory and related management services. Defendants, in turn, agreed that Plaintiff would be entitled to a 5.0% Profits Interest in exchange for the services provided.

29.     Plaintiff performed the obligations contractually required of him and, through February 11, 2015, expressed his desire to continue to do so.

30.     Defendants wrongfully and without cause breached their contractual obligations, by (a) failing to issue Plaintiff the expected 5.0% Profits Interest, (b) terminating their working relationship with Plaintiff without cause and insisting that the termination was a "voluntary

separation" by Plaintiff, and (c) refusing to otherwise perform their obligations under the Profits Interest Contract.

31. Defendants were not excused from or otherwise precluded from performing any of their contractual obligations.

32. As a direct result of Defendants' breach of the Profits Interest Contract, Plaintiff has and will continue to:

    a. suffer injury by Defendants' bad faith failure to perform their obligation to convey Plaintiff the 5.0% Profits Interest, or, in the alternative,

    b. suffer damages including the loss of an amount equal to 5.0% of the net proceeds realized upon the sale of the Project, WQ, or WQO.

## SECOND CLAIM FOR RELIEF
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

33. Plaintiff incorporates by reference the allegations set forth herein.

34. Following the creation of the Profits Interest Contract, and following Plaintiff's performance of all contractual duties requested of him, Defendants failed to convey the Profits Interest to Plaintiff. Defendants further attempted to unilaterally and materially change the terms of the Profits Interest Contract through the re-definition of termination for "cause." Specifically, Defendants attempted to impose a highly subjective and inequitable Code of Conduct under which Plaintiff could be terminated in Defendants' discretion, resulting in Plaintiff's forfeiture of the consideration guaranteed him under the Profits Interest Contract.

35. Defendants' attempt to impose a new, highly subjective standard for termination "for cause" to relieve themselves of their financial obligations to Plaintiff was in bad faith and deprived Plaintiff of the benefit and expectations created by the Profits Interest Contract.

36. Defendants' failure to convey the Profits Interest was in bad faith and deprived Plaintiff of the benefit and expectations created by the Profits Interest Contract.

37. Defendants' actions violated the implied covenant of good faith and fair dealing implicit in the Profits Interest Contract through which Plaintiff provided services to Defendants.

38. As a direct result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff has and will continue to:

   a. suffer injury by Defendants' bad faith failure to perform their obligation to convey Plaintiff the 5.0% Profits Interest, or, in the alternative,

   b. suffer damages including the loss of an amount equal to 5.0% of the net proceeds realized upon the sale of the Project, WQ, or WQO.

39. Defendants' bad faith breach of contract and the covenant of good faith and fair dealing further entitles Plaintiff to recover his reasonable attorneys fees incurred in prosecuting this claim.

### THIRD CLAIM FOR RELIEF
### FRAUD/MISREPRESENTATION

40. Plaintiff incorporates by reference the allegations set forth herein.

41. Defendants fraudulently induced Plaintiff to perform work and provide his services based on repeated, affirmative representations of compensation through, initially, an hourly fee-for-services agreement and, subsequently, through the grant of the Profits Interest, as described in the Profits Interest Contract, beginning in February 2014, and continuing through February 2015. Defendants intended for Plaintiff to rely on their representations, to his own detriment.

42. Such representations were made in oral communications between Plaintiff, PDO and JKO and were documented and confirmed in various emails and other writings. Ultimately, on January 5, 2015, the agreed upon representations were reduced to written terms and incorporated in the final, executable version of WQ's Operating Agreement.

43. Defendants' representations (a) that Plaintiff would be granted a 5.0% Profits Interest; (b) that Plaintiff's rights in the Profits Interest would be non-forfeitable; and (c) that termination "for cause" could only result from a specifically limited definition of "cause" were untrue and intentionally misleading.

44. Defendants did not intend to perform on their promises, and indeed Defendants did not perform according to their representations.

45. At the time Defendants made their misrepresentations about their intent to compensate Plaintiff, all parties were working diligently to make the Project successful. Defendants had represented to Plaintiff that similar development projects were worth as much as $1,000,000 per megawatt. As such, Plaintiff reasonably believed that Defendants would and could compensate him with a 5.0% Profits Interest. The value Plaintiff added to the Project led him to reasonably believe Defendants' representations.

46. Defendants knew their representations were inaccurate and unfounded, or they made the representations recklessly without regard for the truth. Defendants induced Plaintiff to perform his contractual obligations via reckless representations, including representations as to the projected profits from the Project

47. Plaintiff's performance of his services as Defendants requested and his reliance on Defendants' misrepresentations were to his substantial financial, business, and personal

detriment. Plaintiff has and will continue to suffer damages as a direct result of Defendants' fraudulent misrepresentations.

## FOURTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT AND QUANTUM MERUIT

48. Plaintiff incorporates by reference the allegations set forth herein.

49. Plaintiff performed valuable financial advisory and related management services in exchange for Defendants' promise to grant Plaintiff the 5.0% Profits Interest.

50. Plaintiff performed valuable financial advisory and related management services with the reasonable expectation of compensation in return.

51. Defendants requested, received, and accepted the benefits of Plaintiff's time, expertise, experience, and training, which furthered Defendants' business objectives and progress in various ways, including, but not limited to raising necessary operating capital, serving as investor liaison, establishing and managing requisite capital and operating budgets, revising Defendant's business structure, and providing guidance and support in pursuing the various development milestones related to environmental permitting, engineering, and securing agreements for the purchase of the electrical power to be generated by the Project.

52. Defendants at all times knew that Plaintiff expected to be compensated for his services as negotiated and agreed upon by the parties.

53. Because Defendants have failed to compensate Plaintiff for his valuable services in accordance with the Profits Interest Contract or in any other comparable way, Defendants have been unjustly enriched.

54. Plaintiff is entitled to relief in equity for the damages resulting from said unjust enrichment.

## FIFTH CLAIM FOR RELIEF
## PROMISSORY ESTOPPEL

55. Plaintiff incorporates by reference the allegations set forth herein.

56. Defendants made promises to Plaintiff that they would convey the Profits Interest and otherwise perform the Profits Interest Contract in exchange for the work, services and expertise Plaintiff provided to Defendants.

57. Defendants' promises induced Plaintiff to perform valuable financial advisory and related management services, to which Defendants would not otherwise be entitled.

58. Plaintiff reasonably relied on Defendants' promises to convey the Profits Interest and otherwise perform the Profits Interest Contract.

59. Plaintiff relied to his detriment by performing services in exchange for Defendants' promise to convey the Profits Interest and otherwise perform the Profits Interest Contract.

60. The equities support enforcement of the Profits Interest Contract and Defendants' promises.

61. To prevent fraud or injustice, a judgment should be entered in Plaintiff's favor against Defendants to pay 5.0% of the net proceeds of the sale of the Project, WQ, or WQO, or to require that Defendants specifically perform their obligations under the Profits Interest Contract by unconditionally conveying the Profits Interest to Plaintiff and otherwise performing the Profits Interest Contract.

## SIXTH CLAIM FOR RELIEF
## DECLARATORY JUDGMENT ON CONTRACT

62. Plaintiff incorporates by reference the allegations set forth herein.

63.   As discussed herein, an actual controversy exists between Plaintiff and Defendants regarding Plaintiff's legal right to the Profits Interest and Defendants' legal obligations to perform the Profits Interest Contract.

64.   Plaintiff desires a declaration by this Court as to (a) Plaintiff's legal right to the Profits Interest; (b) Plaintiff's non-forfeiture of the Profits Interest under any circumstances; (c) Defendants' obligation to convey the Profits Interest; and (d) Defendants' obligation to pay the Profits Interest upon sale of the Project, WQ, or WQO, in accordance with the terms of the Profits Interest Contract.

**WHEREFORE**, Plaintiff Jonathan Cleary prays that this Court enter a judgment as follows:

A.   Ordering Defendants to unconditionally convey the Profits Interest to Plaintiff and, otherwise, to specifically perform their obligations to Plaintiff pursuant to the Profits Interest Contract;

B.   Awarding Plaintiff expectation damages in an amount equal to 5.0% of the net proceeds of the sale of the Project, WQ, or WQO,

C.   Awarding Plaintiff compensatory, general, special, and punitive damages in an amount to be proven at trial;

D.   In favor of Plaintiff against Defendants for unjust enrichment in an amount to be proven at trial;

E.   Awarding Plaintiff reasonable attorneys fees available at law or in equity;

F.   Awarding Plaintiff all costs and fees;

G. Declaring that Plaintiff has a legal right to the agreed Profits Interest; Plaintiff did not forfeit the Profits Interest in any way; Defendants are obliged to convey the Profits Interest; and Defendants are obliged to pay the Profits Interest upon sale of the Project, WQ, or WQO, in accordance with the terms of the Profits Interest Contract;

H. Awarding Plaintiff pre-judgment interest on any amounts owed to Plaintiff, at the default interest rate of 15% per annum;

I. Awarding Plaintiff post-judgment interest on the amount hereby awarded, at the default interest rate of 15% per annum; and

J. Awarding Plaintiff such other further relief as the Court deems appropriate and just under the circumstances.

DATED this 20th day of October 2015.

JONATHAN CLEARY, PLAINTIFF

By: _____
Lucas Buckley, #6-3997
Heather N. Jarvis, #7-5503
Hathaway & Kunz, P.C.
P. O. Box 1208
Cheyenne, WY 82003
Phone: (307) 634-7723
Fax: (307) 634-0985

ATTORNEYS FOR
PLAINTIFF JONATHAN CLEARY